# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2542-18T2

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

DOUGLAS S. COOK,

     Defendant-Appellant.

_____

Submitted November 18, 2019 – Decided December 13, 2019

Before Judges Sabatino and Geiger.

On appeal from the Superior Court of New Jersey, Law Division, Mercer County, Indictment No. 10-03-0304.

Joseph E. Krakora, Public Defender, attorney for appellant (Abby P. Schwartz, Designated Counsel, on the brief).

Angelo J. Onofri, Mercer County Prosecutor, attorney for respondent (Laura Sunyak, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Douglas S. Cook appeals from a November 27, 2018 Law Division order denying his petition for post-conviction relief (PCR) without an evidentiary hearing. We affirm.

A Mercer County Grand Jury returned an indictment charging defendant with two counts of second-degree sexual assault of a child less than thirteen years old, N.J.S.A. 2C:14-2(b) (counts one and two); two counts of second-degree endangering the welfare of a child less than sixteen years old that he had the legal duty to care for, or whom he had assumed responsibility for the care of, N.J.S.A. 2C:24-4(a) (counts three and four); and fourth-degree endangering the welfare of a child (count five), N.J.S.A. 2C:24-4(b)(5)(b). The offenses were alleged to have occurred on August 2, 2009.

Defendant entered into a plea agreement with the State on August 18, 2011, pleading guilty to count three in exchange for the State agreeing to recommend treating the second-degree endangering charge as a third-degree offense for sentencing purposes, and a suspended three-year term, together with dismissal of the other four counts.

At the plea hearing, the assistant prosecutor described the terms of the plea agreement. Included within that description was the assistant prosecutor's statement that the sentence "would carry with it the requirements of Megan's

Law, as well as parole supervision for life." The assistant prosecutor also posited that the State would be asking the court to issue a Nicole's Law restraining order. The State would further request the court to restrict defendant "from use of the Internet, particularly, that he be restricted from going onto any social networking sites or that his internet usage be restricted entirely, as a condition of his parole." Defense counsel confirmed that those representations were accurate.

After being sworn, defendant testified he was fifty-four years old, a high school graduate, and could read, write, and understand the English language without difficulty. When asked if the terms of the plea agreement set forth by the assistant prosecutor were accurate, defendant answered in the affirmative. The judge then reviewed the terms of the plea agreement with defendant. Defendant confirmed that he understood the plea agreement included being subject to Megan's Law and the recommendation that a restraining order would be imposed, pursuant to Nicole's Law, prohibiting both contact with the victim and unsupervised contact with children under the age of sixteen. The judge also discussed the State's intention to request restrictions on Internet usage.

Defendant acknowledged that no one had threatened or coerced him into pleading guilty. Defendant also acknowledged that he had reviewed all of the

discovery with his attorney, that his attorney had answered all of his questions, that he did not have any questions that had not been answered, and that he was satisfied with his attorney's legal representation.

The judge then proceeded to review the plea forms with defendant. Defendant confirmed he had initialed and signed the plea forms, including the supplemental plea form for sexual offenses. He acknowledged that he had reviewed each of the questions on the plea forms with his attorney and that his answers to the questions were true. He testified that he wanted to give up the right to a trial and the rights associated with a trial and plead guilty. He further indicated he was given enough time to think about the plea agreement and to discuss it with his attorney.

Defendant confirmed that he knew what Megan's Law is and that he understood he was pleading guilty to a Megan's Law offense. He acknowledged understanding he would be subject to registration and notification requirements under Megan's Law for the rest of his life. Defendant also indicated he understood that if he failed to comply with those requirements he could be criminally prosecuted for a fourth-degree offense.

A discussion between counsel and the judge followed with respect to whether the questions on the supplemental plea form pertaining to community

4

supervision for life (CSL) or parole supervision for life (PSL), should be answered. Counsel agreed that since the offense occurred after January 14, 2004, PSL applied. Defendant's attorney explained that when defendant answered the supplemental plea form initially, he answered the questions for PSL. Defendant's attorney then inadvertently had defendant answer the questions for CSL. Counsel reiterated that defendant would be subject to PSL. Defendant's attorney stated the original version with the PSL questions answered would be attached to the plea forms. The following colloquy took place between the judge and defendant:

Q. You understand that you're subject to {[PSL], correct?

A. Yes.

Q. And you're agreeable to that --

A. Yes.

Q. --as part of the plea?

A. Yes.

Defendant then provided a factual basis for his plea. Defendant acknowledged that on August 2, 2009, he was babysitting M.D.,[1] who was then four years old, in his home. Defendant admitted touching her vagina and that

---

[1] We identify the victim by initials to protect her identity. R. 1:38-3(d)(10).

by doing so his "conduct would impair or debauch her morals, as defined in the statute." On questioning by the assistant prosecutor, defendant admitted that his touching of M.D. was under her clothing. When asked do "you understand that this would have a tendency to impair or debauch that child's morals based upon the conduct and her age," defendant answered "yes."

The judge accepted the plea, finding it was made "freely, voluntarily and knowing all consequences thereto, including Megan's Law, Nicole's Law, [PSL] and the forfeiture, as well as the other terms of the plea agreement." The judge also found defendant had not been threatened or promised anything outside of the terms of the plea agreement and understood the terms of the agreement and the rights he was waiving. The judge further found defendant gave a sufficient factual basis for the plea.

Defendant was sentenced on April 10, 2012. During the hearing, defendant's attorney noted this was defendant's first felony conviction and that he had cooperated by entering into the plea agreement. She further noted that the presentence report was accurate. Defense counsel stated defendant had earned 743 days of jail credit. She argued against a lifetime Internet ban, claiming a lifetime ban would infringe defendant's First Amendment rights.

The assistant prosecutor requested that defendant's Internet access be "limited to that which is reasonable in his position" but noted that Internet bans are a matter for parole to enforce. Defendant's allocution was limited to discussing Internet restrictions.

The court found aggravating factor nine, the need to deter defendant and others from violating the law, N.J.S.A. 2C:44-1(a)(9). It gave "partial credit" to mitigating factor twelve, the willingness of defendant to cooperate with law enforcement officials, N.J.S.A. 2C:44-1(b)(12). The court found the aggravating factor slightly outweighed the mitigating factor.

The court sentenced defendant in accordance with the terms of the plea agreement to a suspended three-year term, subject to Megan's Law, a restraining order pursuant to Nicole's Law, PSL, and imposed the applicable fines and penalties. As to Internet restrictions, the court barred defendant "from any social networking website. . . . However, online banking, bill paying shall be permitted."

Following a discussion with counsel at sidebar, the court modified its sentence, stating, it was "not going to impose any ban on Internet access as part of the sentence." The court noted parole "has its own ability to impose whatever restrictions on his Internet use, or even a total Internet ban in its administrative

authority conferred upon it by the statute." The court indicated it would "remove" the Internet restriction as a sentencing condition, leaving such considerations to the discretion of parole. The court dismissed the remaining counts.

Defendant did not file a direct appeal from his conviction or sentence.

Defendant filed a pro se petition for PCR on March 23, 2017. Counsel was appointed to represent defendant. An amended petition and letter brief were filed on defendant's behalf. Defendant's petition was based on a claim of ineffective assistance of counsel. The petition as amended alleged his attorney did not apprise him of the consequences of his guilty plea and, therefore, his plea was not knowing and voluntary. Defendant further alleged that: (1) his attorney failed to conduct investigation through witness interviews or file motions to compel discovery; (2) the factual basis for his plea was insufficient; (3) the PSL statute is unconstitutional; (4) he should be allowed to withdraw his plea under State v. Slater;[2] (5) cumulative error compels the court to grant PCR; and (6) the judgment of conviction (JOC) contains errors. Defendant also claimed he was entitled to an evidentiary hearing.

---

[2] State v. Slater, 198 N.J. 145 (2009).

Following oral argument, Judge Timothy P. Lydon issued a November 27, 2018 order and comprehensive twenty-five page written opinion denying PCR without an evidentiary hearing. The opinion addressed each of defendant's claims, concluding they were procedurally barred, lacked merit, and did not establish a prima facie case for PCR.

Defendant argues his attorney did not review the actual conditions imposed by PSL, including the possibility he could be "sent to prison through the parole review process." He claims that if he had known the consequences of PSL, he would have rejected the State's plea offer. Judge Lydon rejected this claim, reviewing the contents of the plea forms and plea hearing in detail. The judge found:

> Th[e] discrepancy between the two [plea] forms was identified and resolved at the plea hearing on August 18, 2011. Defendant's attorney informed the court that she completed two versions of the form. The court inquired whether [d]efendant properly understood the terms of the plea agreement and that he was subject to PSL. Defendant replied in the affirmative and explicitly acknowledged that he was being placed on PSL.

The PCR judge found defense counsel's error did not compromise defendant's Sixth Amendment rights. He noted, "[d]efendant agreed on the first set of plea forms to receive a sentence of PSL and accept its respective

9

conditions." The judge also concluded defendant "failed to demonstrate that counsel's performance 'affected the outcome of the plea process.'" (Quoting Hill v. Lockhart, 474 U.S. 52, 59 (1985)). The judge noted "[d]efendant verbally confirmed to the court that he was subject to PSL and was 'agreeable' to the associated conditions." The judge determined there was "nothing in the record" supporting defendant's claim that he would not have accepted the plea offer if his "[attorney] or the [c]ourt explained what PSL actually meant."

The judge also noted that defendant's attorney negotiated a favorable plea agreement that resolved four second-degree charges that exposed defendant to five to ten years imprisonment on each count, and also imposed a three-year suspended sentence. The judge explained:

> Because of these compelling terms, it is improbable that [d]efendant would have rejected the plea agreement. Defendant has not presented any evidence that he was in a position to negotiate a better plea agreement or achieve a more advantageous result at trial. Thus, [d]efendant has failed to establish prejudice under prong [two] of the Strickland[3] test.

The judge next addressed defendant's claim that his attorney failed to compel discovery, interview witnesses, or file any motions to protect his rights. The judge rejected these "generalized, non-specific claims," noting that

---

[3] Strickland v. Washington, 466 U.S. 668 (1984).

A-2542-18T2

defendant "may not rely on 'bald assertions that he was denied the effective assistance of counsel.'" (Quoting State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999)). The judge explained:

> Defendant has failed to identify any deficiencies concerning discovery or motion practice. He does not cite any motions that should have been filed or describe any missing discovery. Most significantly, he has not explained the effect of these vague allegations on the outcome of his case.
>
> His remaining contention is also unavailing. Defendant has not identified any witnesses or proffered any testimony that would have impacted his plea or a trial.

Defendant claimed the factual basis for his plea was insufficient because it did not "establish the elements of sexual conduct or a tendency to debauch." The judge held this claim was procedurally barred by Rule 3:22-4(a) since it reasonably could have been raised in a direct appeal. The judge found the information necessary to support the claim was available to defendant by way of a transcript of the plea hearing at the time a direct appeal could have been filed. The judge also found that imposing the procedural bar would not result in a fundamental injustice since "[d]efendant's factual basis supported his guilty plea."

The judge noted that knowledge that the acts would impair or debauch the child's morals was not an element of the offense. Instead, "defendant merely ha[d] to acknowledge that his conduct had the propensity to do so." Defendant admitted that his conduct "would" and "would have a tendency" to "impair or debauch her morals."

The judge rejected defendant's claim that he did not engage in sexual contact. He explained that "sexual contact 'means an intentional touching by the victim or actor, either directly or through clothing, of the victim's or actor's intimate parts for the purpose of degrading or humiliating the victim or sexually arousing or sexually gratifying the actor.'" (Quoting N.J.S.A. 2C:14-1(d)). Defendant acknowledged that he touched the victim's vagina under her clothing. The judge noted some forms of sexual contact with a child, such as touching her intimate parts, are obviously of a sexual nature.

The judge next addressed defendant's request to withdraw his guilty plea. Because defendant's application was made after sentencing, the judge analyzed the application under the "manifest injustice" standard imposed by Rule 3:21-1. Applying the four-prong test adopted by the Court in State v. Slater, 198 N.J.

145 (2009),[4] the judge noted that a bare assertion of innocence was insufficient to warrant withdrawal of a guilty plea. Instead, defendant "must present specific, credible facts." (Quoting Slater, 198 N.J. at 158).

The judge rejected defendant's claim of innocence. He found defendant provided an adequate factual basis, "[h]is acknowledgement of guilt was unequivocal," and his statements satisfied every element of the offense. The judge noted "[d]efendant also reaffirmed his culpability during his presentence interview."

As to the second Slater prong, the court observed that defendant waited until shortly before five years had elapsed since he was sentenced to seek to withdraw his plea. The court also found his reasons for withdrawal were unavailing. The court concluded there was no indication defendant was

---

[4] In Slater, the Court held that:

> trial judges are to consider and balance four factors in evaluating motions to withdraw a guilty plea: (1) whether the defendant has asserted a colorable claim of innocence; (2) the nature and strength of defendant's reasons for withdrawal; (3) the existence of a plea bargain; and (4) whether withdrawal would result in unfair prejudice to the State or unfair advantage to the accused.

> [Id. 157-58.]

pressured into pleading. Defendant acknowledged during the plea hearing that he was not threatened or coerced into pleading guilty. He reviewed the discovery and was satisfied with his attorney's services. He had sufficient time to consider the plea offer and ask any questions he may have had.

Regarding the third Slater prong, the court observed the plea was entered as part of a plea agreement. Therefore, "it [was] afforded a higher degree of finality," with a heavier burden placed on defendant to justify the withdrawal. The court found that because defendant "received a favorable agreement and he entered into it freely and voluntarily, this factor weighs against his request to withdraw his plea."

The fourth Slater prong considers the prejudicial impact on the State if withdrawal were permitted. The court noted that the State is not required to show prejudice since defendant had not established the other three prongs, citing Slater, 198 N.J. at 162. Balancing the four Slater factors, the court denied withdrawal of the plea. The court also determined this case did not present a manifest injustice.

Defendant contended PSL is unconstitutional because it allows the Parole Board to impose penalties for PSL violations, constituting an illegal delegation of "the powers of the judiciary to the Executive branch of government." He

further contended PSL allows the Parole Board to "'play judge and jury' and send free men to prison." The court characterized this claim as a separation of powers argument.

The court determined this challenge was procedurally barred as it could have been raised on direct appeal, citing Rule 3:22-4(a)(3). It found that none of the exceptions to the procedural bar applied since defendant did not rely on a new rule of constitutional law that had been retroactively applied and enforcement of the bar would not result in a fundamental injustice.

The court also found the argument to be substantively without merit. It noted PSL has been previously upheld as a lawful form of indefinite parole by our Supreme Court, citing Riley v. New Jersey State Parole Board., 219 N.J. 270, 288 (2014). Quoting Morrissey v. Brewer, 408 U.S. 471, 480 (1972), the court concluded parole revocation "is constitutional because [it] 'deprives an individual, not of the absolute liberty to which every citizen is entitled, but only of the conditional liberty properly dependent on observance of special parole restrictions.'" The court noted defendant agreed to be sentenced to PSL and "to be subjected to parole revocation in the event he violated the conditions of PSL."

Finding no error, other than the inadvertent error of counsel in the supplemental plea form that was addressed and corrected at the plea hearing, the

court rejected defendant's claim of cumulative error. The court also concluded defendant had "failed to produce any evidence to suggest his counsel's performance had a deleterious impact on this case." The court found "counsel's errors were harmless, and their cumulative effect was negligible."

Based on those findings, the court held defendant had not established a prima facie case for PCR. Therefore, he was not entitled to an evidentiary hearing. More fundamentally, the court found that "an evidentiary hearing will not aid the court's analysis of [defendant's] petition."

Finally, the court addressed defendant's claims that the JOC contains several errors. The court found the JOC errantly contains a ban on social networking despite the sentencing judge's statement during the sentencing hearing that he was "not going to impose any ban on Internet access as part of the sentence."

Defendant also argued that the JOC contains errors as to the aggravating and mitigating factors. During the sentencing hearing, the court found aggravating factor nine applicable and assigned partial credit to mitigating factor twelve, concluding "the aggravating factors slightly outweigh the mitigating factors." The JOC, however, states that "[t]he [c]ourt finds no mitigating factors" and that "[t]he [c]ourt is clearly convinced that the aggravating factors

outweigh the mitigating factors." The PCR court held that "the JOC must be amended to include mitigating factor [twelve] and [to] accurately reflect the weight that was accorded to each sentencing factor."

This appeal followed. Defendant raises the following point for our consideration:

> POINT I
>
> DEFENDANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL BECAUSE HIS ATTORNEY FAILED TO EXPLAIN THE MEANING OF PAROLE SUPERVISION FOR LIFE. BECAUSE OF THIS AND BECAUSE DEFENDANT MAINTAINS HIS INNOCENCE, HIS PLEA OF GUILTY SHOULD BE VACATED OR WITHDRAWN OR AN EVIDENTIARY HEARING SHOULD BE HELD. FAILURE TO [DO] SO WOULD VIOLATE DEFENDANT'S RIGHT TO COUNSEL AND A FAIR TRIAL.
>
> A. Failure to Explain Parole Supervision for Life
>
> B. Motion to Withdraw Guilty Plea

We affirm substantially for the reasons expressed by Judge Lydon in his November 27, 2018 written opinion. We add the following additional comments.

To prove ineffective assistance of plea counsel, a "defendant must show that counsel's performance was deficient," Strickland, 466 U.S. at 687, and but

17

for counsel's errors, "there is a reasonable probability that . . . [the defendant] would not have pled guilty," State v. DiFrisco, 137 N.J. 434, 457 (1994) (second alteration in original) (quoting Hill, 474 U.S. at 59). The court must consider the facts in the light most favorable to the defendant to determine if a defendant has established a prima facie claim. State v. Preciose, 129 N.J. 451, 462-63 (1992).

The record fully supports the findings made and conclusions reached by Judge Lydon. Defendant understood and agreed to be subjected to PSL. He likewise understood that violations of Megan's Law or PSL could result in criminal prosecution and incarceration if convicted.

Defendant's claim that counsel was ineffective by not compelling discovery, interviewing witnesses, or filing unspecified motions amount to nothing more than mere unsupported, bald assertions that are insufficient to establish a claim of ineffective assistance of counsel under Strickland, in any event. See Cummings, 321 N.J. Super. at 169-71 (also finding a petitioner's bald assertions did not support a prima facie case of ineffectiveness). Defendant must allege specific facts "sufficient to demonstrate counsel's alleged substandard performance." Id. at 170. "Thus, when a petitioner claims his trial attorney inadequately investigated his case, he must assert the facts that an investigation

A-2542-18T2

would have revealed, supported by affidavits or certifications based upon the personal knowledge of the affiant or the person making the certification." Ibid. Similarly, if defendant claims trial counsel failed to pursue certain defenses or motions, he must specify those defenses and motions. Here, defendant has failed to provide such certifications or affidavits setting forth any facts in support of his bald assertions. For that reason, his argument is unavailing.

We agree that defendant has not made a colorable claim of innocence. His claim that PSL is unconstitutional is without merit. Several of his claims were procedurally barred because he did not raise them in a direct appeal. Applying the Slater factors, he has not demonstrated a basis to withdraw his plea.

Moreover, defendant received the benefit of a highly favorable plea offer, thereby avoiding the possibility of conviction on multiple counts of second-degree offenses and the resulting exposure to much longer sentences. He has not shown it would have been rational for him to forego the plea offer and face trial and the risk of an increased sentence. See Lee v. United States, ___ U.S. ___, ___, 137 S. Ct. 1958, 1967 (2017) (holding "[c]ourts should not upset a plea solely because of post hoc assertions from a defendant about how he would have pleaded but for his attorney's deficiencies" and "[j]udges should instead

look to contemporaneous evidence to substantiate a defendant's expressed preferences"); Strickland, 466 U.S. at 687, 694; DiFrisco, 137 N.J. at 457.

Defendant did not make a prima facie case of ineffective assistance of counsel. Moreover, an evidentiary hearing was not necessary to decide the issues raised by defendant. Thus, he was not entitled to an evidentiary hearing.

In sum, we find no error or abuse of discretion by the PCR court. Defendant's petition was properly denied without an evidentiary hearing.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION